**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**COUNTY OF NEW YORK**

_____x

WESLEY POWELL,

Plaintiff,

v.

JOHN DEWEES, JOHN CAMPBELL,
and KARL GEE, *individually*

Defendants.

_____x

INDEX No.

**COMPLAINT AND REQUEST FOR INJUNCTION**

WESLEY POWELL ("POWELL" or "Plaintiff"), by and through his counsel, for his Complaint against JOHN DEWEES, JOHN CAMPBELL, and KARL GEE ("CHAIR", "CEO", "COO", individually, or, jointly, "Defendants"), states and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff hereby seeks temporary and permanent removal of Defendants from their currently held positions for breach of bylaws and fiduciary duties, preliminary and permanent injunction against Defendants to restrain them from any activity or practice related with their current positions as Directors and Officers at Open Origin Inc. ("Open Origin"), and payment of damages.

## PARTIES

1

2. Plaintiff, WESLEY POWELL, is CEO, Director and Shareholder of Open Origin Inc., and resides at 145 West 67th Street, 48J, New York, NY 10023.

3. Defendant, JOHN DEWEES, is Chair of the Board of Directors of Open Origin Inc. a Delaware corporation registered in New York with address at 145 W 67th St, APT 48J, New York, NY 10023, and resides at 36 Symor Drive, Morristown, NJ 07960. JOHN CAMPBELL, is the Co-Chief Executive Officer (CEO) at Open Origin Inc., and resides at 9 Bruton Place, Hamilton 3200, Waikato, New Zealand.  KARL GEE is Chief Operations Officer (COO) at Open Origin Inc., and resides at 200 2nd St, APT 1605, Reno, NV 89501.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S. Code § 1332(a).

5. This Court has personal jurisdiction over Defendants because they are Directors and Officers of Open Origin Inc., a Delaware corporation registered in New York, with address at 145 W 67th St, APT 48J, New York, NY 10023, and filing payroll taxes in New York.

6. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims herein occurred in this judicial district; and pursuant to 28 U.S.C. 1391(b)(3) because Defendants are Directors and Officer of a corporation registered in New York with address within this judicial district and are subject to personal jurisdiction in this judicial district with respect to this action.

## FACTS APPLICABLE TO ALL COUNTS AND REQUEST FOR INJUNCTION

7. Open Origin Inc. is a Corporation incorporated in the State of Delaware, and registered in the State of New York. (Exhibit A )

8. Open Origin is a company with global reach dedicated to empower American researches, communities, organizations with American based supercomputers and AI, powered by American green energy, sourcing technologies and partnering with global leaders.

9. Open Origin's bylaws establish that on the second Tuesday of the month of December of each year, the shareholders elect Directors and that the number of Directors of the corporation shall between 1 and 9 inclusive, and (Exhibit B )

10. Open Origin's bylaws also state that special meetings of the Board of Directors may be called by or at the request of the President or any Director, and *notice of any special meeting shall be given at least five (5) days previously* thereto *personally or mailed to each Director* at his business address, or by telegram, unless a Director waives notice of meeting (Exhibit B, Article III, Sections 4 and 5).

11. Open Origin's bylaws allow that "any action required to be taken at a meeting of the Directors, or any other action which may be taken at a meeting of the Directors, may be taken without a meeting", *provided that a consent in writing shall be signed by each Director*. (Exhibit B, Article III, Section 10).

12. The Officers of Open Origin are Chief Executive Officer, President, Chief Operating Officer or Vice President, a Secretary, and Chief Financial Officer, Treasurer, each of whom shall be appointed by the Board of Directors. (Exhibit B , Article V, Sec.1).

13. Open Origin bylaws establish that the officers elected or appointed by the Board of Directors may be removed by the Board of Directors whenever in its judgment, the *best interest of the corporation* would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. (Exhibit B, Article V, Section 3)

14. Plaintiff POWELL is the appointed CEO and President of Open Origin Inc. and has been a Board Member of Open Origin since its incorporation, and, until December, 2023, when other members were elected, he had been the only Board member.

15. On or about January 26, 2024, a special Board meeting of Open Origin Inc. was held and no notice was ever provided to Plaintiff, contrary to what is required by the company's bylaws.

16. In such secret meeting the Board allegedly voted POWELL's termination as CEO and attempting to oust him as Director.

17. On or about January 28, 2024, POWELL sent a letter and an email containing his formal objection to the lack of notice for the unlawfully held special board meeting. (Exhibit C)

18. On or about January 30, 2024, the CHAIR, in representation of the other Directors, included Defendants CAMPBELL and GEE, sent a response letter to Plaintiff, listing a number of wrong allegations, later adjusted in a subsequent letter sent on or about February 1st, 2024. (Exhibit D)

19. In the letters, the CHAIR alleged that Plaintiff engaged in "*improper bookkeeping resulting in investment payments missing from the books*", while Defendant was not in charge of bookkeeping, which had been contracted to an external accounting firm, with whom the then CFO Mr. Neil Goldenberg had exclusive direct communication since the outsourcing. (Exhibit E)

20. In the letters, the CHAIR also falsely alleged that Plaintiff promised employee wages the company could not afford to pay, and accruing unlawful employee wage arrearages, while employee wages were agreed upon in contracts based on the company financial budgeting and investments, and there was no accrual of unlawful employee wage arrearages.

21. In the letters, the CHAIR also made false allegations regarding general misrepresentations that Plaintiff would have made to employees, service providers, vendors, and investors, causing loss of reputation among service providers and vendors. No specific allegations were made, because Plaintiff did not commit any misrepresentations, and continues to maintain excellent business relationships with said providers and vendors. Furthermore, Open Origin has no investors, only creditors.

22. In the second letter, the CHAIR also falsely alleged that Plaintiff made "*reckless and negligent decisions that led to Open Origin facing complete insolvency*", claiming the loss of a $500,000 deposit, while instead, Plaintiff was able to secure and reassign to a new project the $500,000 deposit previously made for an unsuccessful deal.

23. Always in the above letters, the CHAIR claimed "*business judgement*" to legitimate the actions taken by the Board, and erroneously - if not in bad faith - stated that the Board had decided Plaintiff's termination and ousting "*unanimously*", contrary to the fact that at least one Director, Plaintiff, was not even put in the condition to participate and vote, making said unlawful decisions therefore null, void, and not in the best interest of the company.

24. On or about February 8, 2024, Rocco Lamura, the attorney of record, on behalf of Plaintiff, sent a letter to the Board of Directors of Open Origin Inc., opposing the attempted termination and ousting based on the fact that any unlawfully held special meeting, thus any decisions reached therein, was null and void, and requesting that the Board immediately grant POWELL's access to the email server to allow him to carry out his duties in his role as CEO and Board Member of Open Origin Inc.

25. On or about February 8, 2024, after the letter by Mr. Lamura, Plaintiff regained access to the email server to carry out his duties.

26. On or about February 10, 2024, OTC Direct, one of Open Origin's fuel/green chemical commodities broker/dealers, informed Plaintiff that Defendant GEE had inquired with them about the possibility of transferring the opportunities and agreements in progress to another legal entity called Kamaka, to which the broker did not agree under the grounds that it would damage the deals and reduce their credibility and reputation as a dealmaker. OTC Direct informed Plaintiff that Kamaka is attempting to replace Open Origin in the agreements that Open Origin have been negotiating with multiple commodity buyers and sellers through company's broker.

27. Upon information and belief, a few days later, Defendants CAMPBELL and GEE, speaking as Kamaka, contacted OTC Direct intending to withdraw their prior request.

28. Upon Information and belief, Kamaka LLC is a Nevada company in which both KARL GEE and JOHN CAMPBELL have ownership interests. Upon Information and belief, there is also a New Zealand entity called Kamaka Ltd, of which John Campbell is the sole shareholder and is the sole Director, where Mr. Karl Gee instead was previously a shareholder of (Exhibit F).

29. Upon information and belief, there appear to be a number of loans sourced by Defendants KARL GEE and JOHN CAMPBELL and a large $1M loan sourced by Defendant JOHN DEWEES, that went through the Kamaka entity, and where Kamaka is the creditor.

## COUNT I – BREACH OF CONTRACT

30. Plaintiff reasserts and incorporates by reference the allegations set forth in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. Defendants are members of the Board of Directors as well as Officers, and as such, subject to Open Origin's bylaws.

32. Defendants acted in breach of the company's bylaws when unlawfully holding the special meeting to terminate and oust Plaintiff.

33. Defendants violated Article III, Section 5 of the bylaws when they held a special meeting without proper notice to Plaintiff, who was never informed of the special meeting to be held. Such actions by Defendants caused the meeting(s), as well as the decisions therein reached, to be void and null.

34. Defendants violated Article III, Section 10 of the bylaws when they had a Board meeting without obtaining written consent by each Director, included Plaintiff, who was never informed of such secretly held meeting.

35. Defendants acted in violation of the bylaws when they "unanimously" voted Plaintiff's termination and ousting, as a quorum is required under Article III, Section 6 of Open Origin bylaws, while Defendants based the calculation of the quorum on a selected number of Directors, provided that they did not gave proper notice nor informed Plaintiff, not even allowing him to be put in the condition to participate and vote.

36. Defendants violated the company's bylaws when removing Plaintiff from the Board of Directors. As per Article II, Section of the bylaws of Open Origin Inc., Directors are elected by the shareholders in their annual meetings. Here, no shareholders meeting was held to remove directors, and the shareholders were not even put in a position to vote. Thus, Defendants' conduct was unlawful and contrary to the company's bylaws and interests.

37. Finally, Defendants did not act in compliance with Open Origin's bylaws when claimed "*business judgement*" to legitimate their illegal actions; in fact, the interests of Open Origin Inc. are even more egregiously affected by actions against bylaws, lack of a proper Board and void business decisions.

38. Defendants' failure to comply with Open Origin's bylaws is an egregious breach of contract.

## COUNT II – BREACH OF FIDUCIARY DUTIES

39. Plaintiff reasserts and incorporates by reference the allegations set forth in paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. Directors and Officers are subject to the fiduciary duties of care and loyalty to the corporation and its shareholders, both of them breached by Defendants in this case.

41. Defendants did not act in good faith and in the best interest of Open Origin when holding an unlawful secret meeting, and illegally attempting to terminate and oust Plaintiff.

42. Defendants did not act in good faith and in the best interest of Open Origin when attempting to substitute another company to Open Origin's contracts.

43. Of no value is the alleged "business judgment" behind Defendants' actions, as not only is Open Origin currently affected by void and voidable decisions, but Defendants' actions to substitute Kamaka in existing business relationships and contracts of Open Origin is a blatant attempt to usurp corporate business opportunities and transactions in furtherance of their own personal interests, rather than Open Origin's.

44. None of the actions committed by Defendants was committed in good faith or in Open Origin's best interest.

45. Thus, Defendants should be removed from their positions and roles, and indemnify Open Origin and its shareholders for damages.

## COUNT III- FRAUD AND ABUSE OF AUTHORITY

46. Plaintiff reasserts and incorporates by reference the allegations set forth in paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. Defendants intentionally misrepresented Open Origin's directors, officers and shareholders in the reasons to terminate and oust Plaintiff and their intentions to act in the best interest of the company.

48. By inducing the rest of the Board to cooperate in the best interest of the company, they, rather, were furthering their own interests.

49. Directors and shareholders reasonably and detrimentally relied on these representations, trusting that decisions were made in the best interest of the company.

50. On the contrary, Defendants' actions were outrageously unlawful, and against Open Origin's bylaws and interests.

51. Defendants abused their authority to pursue their interests against the interests of the company.

52. As a result, the company and its shareholders have been damaged in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

53. Plaintiff demands a jury trial on all issues so triable.

## REQUEST FOR A PRELIMINARY INJUNCTION

## ARGUMENT

**Plaintiff Is Entitled to a Preliminary Injunction**

54. The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. U*niv. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiff urgently requests a preliminary injunction from this Court to temporarily remove Defendants from their roles and enjoin them from interacting with Open Origin's clients and/or brokers to preserve the status quo of the company and protecting its interests and the great reputation it has been able to build, pending the final determination on the merits.

55. Four factors must be considered before the Court may issue a preliminary injunction: 1) the likelihood of the plaintiff's success on the merits; 2) whether plaintiff will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 19-20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

**I. Plaintiff is likely to succeed on the merits of this action.**

56. Plaintiff is likely to succeed on the merits of this case because Defendants' actions violated Open Origin's bylaws and were committed against the company's interests, fiduciary duties and shareholders' interests, as well as jeopardized Open Origin's current business and relationships.

57. As analyzed above, Defendants committed a breach of contract by violating Open Origin's bylaws, as well as a breach of their fiduciary duties when acting in bad faith against the company's interests and in furtherance of their own.

58. Furthermore, Defendants misrepresented facts and Plaintiff's actions, causing intentional reliance in the rest of the Board and the shareholders, causing significant damages to Open Origin.

59. Thus, Plaintiff is likely to succeed on the merits of this action.

## II. Plaintiff and Open Origin's shareholders will suffer irreparable injury absent a preliminary injunction.

60. Plaintiff satisfies the standards necessary for a preliminary injunction because absent relief, Plaintiff, together with the rest of Open Origin's shareholders, will suffer irreparable injury, because of Open Origin's current state, its exclusion from its business and contractual relationships, in the interests of another company in which Defendants have ownership positions, and the damages to its reputation and reliability within the market. Without a preliminary injunction from this Court enjoining Defendants from remaining in their positions and contacting Open Origin's clients, vendors and partners, Open Origin will likely be substituted in the market and will consequently lose its role, assets, image and reputation with its clients and within it business community. A temporary removal of Defendants from their positions will protect Open Origin's present and future business interests and will not jeopardize its existing business relationships. A preliminary injunction is warranted to preserve the status quo and Open Origin's interests and business relationships.

61. Defendants' conduct will not only irreparably injure Plaintiff, Open Origin, and its shareholder, it will prevent the company from continuing its existing and future business relationships currently at risk because of Defendants' actions. Not to mention that Plaintiff will continue to have his reputation and role irreparably prejudiced by Defendants' actions.

**III. Granting relief to Plaintiff will not result in greater harm to the Defendants**

62. To decide on a motion for preliminary injunction the Court is required to make a balance of hardships.

63. In the case at hand a balance of the interests at stake proves that Plaintiff's interests as a shareholder were clearly damaged and will continue to be damaged as a result of the recurring

11

unlawful and fraudulent actions by Defendants in complete disregard of Open Origin's bylaws and best interests. On the contrary, Defendant will not be affected by the preliminary relief requested.

64. Therefore, it is apparent that the balance of equities tips in Plaintiff's favor.

### IV. The Preliminary Injunction will serve the public interest

65. Plaintiff proved that a preliminary injunction is in the public interest by offering evidence that Defendants' conduct was made in the effort to interfere within Open Origin's business market and trade, affecting proper and good faith business conducts in a global market. Open Origin is a company of global reach that aims to empower researchers, communities, and organizations with supercomputers and AI technologies, promoting green energy solutions and providing global opportunities Therefore, not only will Defendants' conduct affect Open Origin's image and reputation, but the market, good faith operations, researchers and the whole community will be irreparably affected by Defendants' misuse of power affecting Open Origin's long standing relationships and extensive network within the global market.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

a) Grant preliminary and permanent injunctive relief ordering removal of Defendants from their roles as Directors and Officers of Open Origin Inc. for violation of bylaws and fiduciary duties;

b) Grant preliminary and permanent injunctive relief ordering Defendants to refrain from contacting Open Origin's existing or potential clients and/or brokers;

c) Award Plaintiff additional damages or relief in an amount to be proven at trial of not less than $1,000,000, each;

d)    Award Plaintiff additional costs, including attorney's fees, incurred in connection with this action; and

e)    For such other relief as the Court deems appropriate.


Dated: February 22, 2024

Respectfully submitted,

                                                   */s/Rocco Lamura*_____
                                                   Rocco Lamura, Esq.
                                                   LAMURA, MALIZIA, RASILE & PARTNERS LLP
                                                 260 Madison Avenue 8th Floor
                                                 New York, New York 10016
                                                 Tel: (212) 564-5400
                                                 Fax: (646) 536-8719
                                                 rocco.lamura@tlrtlaw.com
                                                 *Attorneys for Plaintiff*